J-A26028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VIRGINIA DAWN BEIGHEY GEORGIADES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL D. GEORGIADES | : | |
| | : | No. 352 WDA 2019 |
| Appellant | : | |

Appeal from the Decree Entered January 31, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. FD15-008755-017

| | | |
|---|---|---|
| VIRGINIA DAWN BEIGHEY GEORGIADES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 405 WDA 2019 |
| MICHAEL D. GEORGIADES | : | |

Appeal from the Decree Entered January 31, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 15-008755-017

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 27, 2020**

Virginia Dawn Beighey Georgiades (Wife) and Michael D. Georgiades (Husband) cross appeal from the trial court's January 31, 2019 divorce decree, which made final the court's orders, granting in part and denying in part, Husband's exceptions and Wife's cross-exceptions to the master's report and recommendation.  After our review, we affirm, in part, on the trial court's

opinion, and we remand for correction with respect to the parties PNC money market account.[1]

The parties married in 1998 and separated in 2015. They have three minor children and one adult child. Since the parties separated, they have engaged in extensive litigation over various issues, including custody, support, alimony and equitable distribution.

Following a hearing, the master issued a report and recommendation, dated April 17, 2018. The master found that Wife, age 51, an attorney for U.S. Steel, has been fully employed throughout the marriage and has been the primary wage earner during the marriage. Husband, who is 56, has an associate's degree in management information systems; he held various information technology (IT) positions throughout the marriage. The master determined that Husband had quit and/or been fired from some positions, chose not to work at all between 2003 and 2009, and was unemployed between 2011 and 2013. More recently, Husband worked as an assistant manager at a gas station; he quit that job to work as a driver for Uber/Lyft. Husband testified that he chose to be unemployed to care for his children; Wife, however, testified that she took maternity leave for six months after

---

[1] The trial court agreed with Husband's exception that in calculating the value of the marital estate, the court should have used the balance of Wife's PNC Premium Money Market Account as of the date of separation, $32,070.59, instead of $11,069.00. *See* Trial Court Opinion, 5/23/19, at 28. This will result in an increase in the value of the marital estate of $21,001.59.

each birth, they hired a nanny for seven years, and the children attended day care.

The master valued the marital estate at $1,500,805.00. After considering the factors set forth in section 3502(a) of the Divorce Code, the master recommended the marital estate be distributed 55% to Husband and 45% to Wife, and that Husband be awarded alimony for four years: $2,200.00/month for the first 24 months following entry of the divorce decree; $1,850.00/month for the 12 months thereafter; and $1,500.00/month for the last 12 months of the four-year period.

The master also recommended that for 2017, Wife pay Husband $4,185.00 as alimony *pendente lite* (APL) and $2,141.65 in child support for the three minor children. The master noted this amount takes into account 50% shared custody of the three minor children. The master also recommended that beginning in 2018, Wife pay Husband $3,454.22 in APL, and $2,195.92 in child support. Upon entry of the final decree in divorce, the master recommended Wife continue to pay child support in the amount of $2,195.92/month until further court order.

Both parties filed exceptions, which the Honorable Jennifer Satler granted in part and denied in part. The court resolved all issues relating to alimony, attorney's fees, and equitable distribution, in particular reducing Husband's share of the marital estate from 55% to 50%, and remanding the matter to a hearing officer on the issue of support. Following a complex support hearing, and in accordance with the parameters set by the court, the

hearing officer recommended Wife pay Husband $5,159.15/month in APL and child support for the four minor children, and that effective June 14, 2018 (post-emancipation for the oldest child), Wife pay Husband $5,511.00/month for APL and child support for the three minor children.

On appeal, Husband raises the following claims:

1. Whether the trial court erred when it reduced Husband's share of the marital estate from 55% to 50%?

2. Whether the trial court erred in not tax affecting [sic] the distributed assets so as to in effect provide Husband less than the stated percentage?

3. Whether the trial court erred in overturning the support retroactivity date the master used from 2017 to 2018?

4. Whether the trial court appropriately allocated costs to Husband for expenses of Wife's residences of which Wife had exclusive possession?

5. Whether the trial court erred in assessing the value of the marital residence and disturbing the appraised value by making Husband responsible for costs of Wife's remodeling which she did while having exclusive possession or which were spent while the parties were together?

6. Whether the trial court erred in not valuing the parties' personalty and providing Husband only pictures [sic]?

7. Whether the trial court erred in determining Husband's TIAA CREF account was a marital asset when it was a premarital asset?

8. Whether the trial court erred in reducing the master's award of cash to Husband?

9. Whether the trial court erred in designating certain assets to Husband as advances on the marital estate which kept the same [sic] from the calculation of the marital estate for the purpose of awarding Husband 55% of the marital estate?

Appellant Husband's Brief, at vii-viii.

On cross-appeal, Wife raises the following issues:

1. Whether the trial court erred and/or abused its discretion in finding that alimony is necessary in this case?

2. Whether the trial court erred and/or abused its discretion in adopting the master's recommendation as to the amount of alimony payable to Husband?

3. Whether the trial court erred and/or abused its discretion in adopting the master's finding that Husband's earning capacity was $20,000 annually in 2017, and $22,000 annually in 2018?

4. Whether the trial court erred and/or abused its discretion in requiring Wife to make a lump sum cash payment of $18,750 to Husband as part of the equitable division of marital property?

5. Whether the trial court erred and/or abused its discretion in granting Husband's petition to prohibit bifurcation by order dated October 15, 2018, which prevented Wife from obtaining a divorce decree in October 2018 after the trial court's final order was issued on September 24, 2018?

6. Whether the trial court erred and/or abused its discretion in denying Wife's petition for special relief by order dated November 9, 2018, thereby precluding Wife from obtaining a divorce decree in December 2018, and in failing to terminate Husband's [APL] as of June 14, 2018, and/or to grant the other relief requested in her petition for special relief?

7. Whether the trial court erred and/or abused it discretion in the order dated November 9, 2018, requiring Wife to pay Husband $700 in attorney's fees?

8. Whether the trial court erred and/or abused its discretion in its orders of January 18, 2019, by refusing to terminate Husband's [APL] effective as of the date of the final divorce decree as requested by Wife in her petition for special relief?

Cross-Appellant Wife's Brief, at 4-5.

- 5 -

Our standard of review in reviewing a trial court's equitable distribution order is as follows:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 386–87 (Pa. Super. 2015) (quoting *Childress v. Bogosian*, 12 A.3d 448, 455–56 (Pa. Super. 2011)) (internal citations and quotation marks omitted). *See also Yuhas v. Yuhas*, 79 A.3d 700 (Pa. Super. 2013) (en banc) (in assessing propriety of marital property distribution, abuse of discretion is not found lightly, but only upon showing of clear and convincing evidence).

The relevant factors when fashioning equitable distribution awards are set forth in 23 Pa.C.S.A. § 3502(a):

[T]he trial court must consider the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation or marital property, value of each party's separate property; standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children.

*Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004). "The weight accorded the various factors is dependent on the circumstances and is a matter within the court's discretion." *Id.* (citing *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997) (en banc)). "Our scope of review requires us to measure the circumstances of the case against the objective of effectuating economic justice between the parties in discerning whether the trial court misapplied the law or failed to follow proper legal procedure." *Gates v. Gates*, 933 A.2d 102, 105 (Pa. Super. 2007) (citation omitted).

Husband first argues the trial court erred when it reduced his share of the marital estate from fifty-five percent, which the master recommended, to fifty percent. Husband claims the court's "rationale" is an abuse of discretion. Appellant Husband's Brief, at 12. We disagree. We note that our review of the record indicates the trial court considered the statutory factors as they applied to the facts of this case. Furthermore, the trial court has "the

authority to divide the award as the equities presented in the particular case may require." **Drake v. Drake**, 725 A.2d 717, 727 (Pa. 1999).

Here, Judge Satler reiterated the master's reasoning for the recommended distribution:

> Wife's earning capacity is much greater than Husband's and she will have the opportunity to increase her sole and separate estate throughout her future employment. Wife is 51 and Husband is 56. The [m]aster is going to be awarding alimony to Husband for a 4[-]year period so that when he reaches age 60 he will be able to draw down on the IRA or 401(k) funds he will be receiving in equitable distribution without penalty. Hopefully he will have improved his earnings by working full time. Plus, when the alimony ends, he will continue receiving child support for [A.G.] and [J.G] until they graduate from [h]igh [s]chool. While the [m]aster is mindful that Wife will be solely responsible for children's college education, under current Pennsylvania law, parents have no obligation to support their children through college, so this is not a factor the [m]aster may address.

Trial Court Opinion, 5/23/19, at 19-20. The trial court pointed to the following factors in support of its decision to reduce Husband's award: (1) the master's analysis presumed, in error, that Husband would incur a penalty if he withdrew money from the funds he would receive in equitable distribution via a Qualified Domestic Relations Order; and (2) Husband chose to be unemployed or under-employed for a significant part of the parties' marriage, which the master had acknowledged. The trial court also noted Husband had received nearly $100,000 in APL as of the time of trial, over $85,000 from two years' worth of Wife's severance payments from the law firm of Greenberg Traurig, and would continue to receive alimony for four years and child support beyond that. **See id.** at 21. The trial court acknowledged Wife's contributions to

building the marital estate, stating, "[I]n choosing to remain either unemployed or under-employed, Husband was also choosing to not contribute to [the parties'] standard of living, their station in life, and to their marital assets." *Id.* Examining the equitable distribution award as a whole, we do not find that the trial court abused its discretion when it awarded the parties a 50/50 distribution. *Morgante*, *supra*.

Next, Husband claims the court erred in overlooking the tax consequences of the distribution award, which he characterizes as "negative" and "uneven." *See* Appellant Husband's Brief, at 15. Pursuant to section 3502(a)(10.1) of the Divorce Code, the court must consider the "Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain." 23 Pa.C.S.A. § 3502(a)(10.1). Contrary to Husband's claim, the trial court did consider tax ramifications, pointing out that the marital estate was "cash poor and asset heavy." The bulk of Husband's award was in the form of withdrawals from Wife's IRAs to IRAs of Husband's designation, which the court recognized would result in Husband incurring taxes upon withdrawal. The court also considered the fact that the assets awarded to Wife, contrary to Husband's assertion, were not "cash assets." Appellant Husband's Brief, at 13. The marital estate consisted primarily of retirement accounts and real property. The marital home and vacation home were both awarded to Wife, and she will incur substantial taxes and expenses if the properties are sold in

order to generate cash. We find no error or abuse of discretion. ***See Carney v. Carney***, 167 A.3d 127 (Pa. Super. 2017).

In his third issue, Husband argues the court erred in overturning the support retroactivity date.[2] Husband filed a motion to modify support on January 25, 2018. The master recommended support retroactive to January 1, 2017. The trial court determined the effective date was January 25, 2018, the date of filing, since Husband had not requested retroactive modification to a date earlier than the date of filing. Further, Husband offered no evidence to support retroactive modification. ***See*** Trial Court Opinion, at 26-27 ("At no point in his Motion does Husband set forth justification for retroactively modifying the support order prior to his filing date of January 25, 2018. Likewise, at trial Husband offered no testimony that he was physically or mentally precluded from previously filing for modification of support, or that Wife had made misrepresentations to him that precluded him from previously fling for a modification of support." ). ***See also*** Pa.R.C.P. 1910.17(a) (fixing effective date of support order at date of filing complaint).

In his fourth issue, Husband challenges the court's allocation of costs for home maintenance expenses, and claims the court erred in finding Husband was advanced $8,250.00 for Wife's payments for improvements to the marital residence. We find no abuse of discretion, and we rely on the trial court's opinion to dispose of this claim. ***See*** Trial Court Opinion, ***supra*** at 22-

---

[2] We note Husband's argument on this issue is numbered 6, not 3. ***See*** Pa.R.A.P. 2119.

23 (Husband received benefit of value of maintenance and improvement expenses in calculation of marital estate; one-half of costs properly treated as advance to Husband).

In his fifth issue, Husband argues the court erred in assessing the value of the marital residence and disturbing the appraised value by making Husband responsible for costs of Wife's remodeling which she did while having exclusive possession or which were spent while the parties were together. Husband provides no corresponding argument to this claim in his brief. His fifth argument pertains to an automobile and Wife's severance payments. Pursuant to Pennsylvania Rules of Appellate Procedure 2119, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Compliance with the rule aids this Court in identifying and addressing an appellant's claims. We conclude, therefore, that Husband has abandoned this claim. "[T]his Court will not consider an argument that has been abandoned." *See Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 320-21 (Pa. Super. 2015) (Superior Court will not address issue presented in statement of questions involved where no corresponding analysis is included in the brief); *see also Lechowicz v. Moser*, 164 A.3d 1271, 1276 (Pa. Super. 2017) (Superior Court will not consider argument that is not properly developed); *Kituskie v. Corbman*, 682 A.2d 378, 383 (Pa. Super. 1996)

(issues not properly developed or argued in argument section of appellate brief are waived).

In his sixth claim, Husband argues the court erred in not valuing the parties' personalty. This claim, too, has been abandoned. As noted above, Husband's sixth argument pertains to the retroactivity of support. *See supra* note 2. His argument on this point is numbered "X," and that argument merely challenges the court's reliance on the master's credibility determinations. *See* Trial Court Opinion, *supra* at 19; *Morgante*, *supra*; *see also Jayne v. Jayne*, 663 A.2d 169, 172 (Pa. Super. 1995) (in determining issues of credibility, master's findings must be given fullest consideration for it was master who observed and heard testimony and demeanor of witnesses) citing *Schuback v. Schuback*, 603 A.2d 194, (Pa. Super. 1992) and *Dukmen v. Dukmen*, 420 A.2d 667, 670 (Pa. Super. 1980). We find no error or abuse of discretion.

Next, Husband claims the trial court erred in determining Husband's TIAA CREF account was a marital asset. The trial court found that this 401k account, which was obtained though Husband's employment prior to the marriage, increased in value during the marriage, and that the increase was properly determined to be marital property. We find no error or abuse of discretion, and rely on the trial court's discussion of this issue in its opinion. *See* Trial Court Opinion, *supra* at 15-16 (given lack of evidence of value before marriage, and given evidence of increase in value during marriage, court considered entire value to be marital property).

In his seventh issue, argued as "VIII" in his brief, Husband claims the court erred in reducing the master's award of a cash payment of $25,000.00 to $18,750.00, as a result of the reduction of the equitable distribution award from 55% to 50%. Based on our discussion above on issue one, we find this claim meritless.

In his final issue, Husband claims the trial court erred in designating certain assets to Husband as advances on the marital estate. Once again, we find no corresponding argument on this issue. This issue is waived. **_See_ _Koller_**, **_supra_**.

We now turn to Wife's cross-appeal. In her first three issues, Wife claims the court erred in: (1) adopting the master's recommendation of alimony; (2) adopting the master's recommendation as to the amount of alimony; and (3) adopting the master's recommendation as to the duration of the alimony award.

> Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support [himself or] herself through appropriate employment are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award.

***Cook v. Cook***, 186 A.3d 1015, 1019 (Pa. Super. 2018) (citations and quotations omitted). In determining "whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider **all** relevant factors, including the 17 factors that are expressly mandated by statute." ***Lawson v. Lawson***, 940 A.2d 444, 447 (Pa. Super. 2007) (emphasis in original).

After our review, we find no abuse of discretion in the court's alimony award. We rely on the trial court's opinion to dispose of these issues. ***See*** Trial Court Opinion, ***supra*** at 28-31 (court considered statutory factors under section 3701(b), noted Wife's earning capacity exceeds Husband's earning capacity, limited duration of alimony to four years, and made alimony award modifiable in event Husband obtained job grossing $40,000/year).

In her fourth issue, Wife claims the trial court erred and/or abused its discretion in adopting the master's finding that Husband's earning capacity was $20,000 in 2017 and $22,000 in 2018. Husband has an irregular employment history; the master found, and the trial court agreed, that Husband had been unemployed or under-employed for most of the parties' marriage. Regardless of whether this was by the parties' agreement, the fact remains, as the trial court noted, that "Husband is likely not an attractive candidate for employers," Trial Court Opinion, ***supra*** at 32, and it will take some time for him to realize his financial worth. We find no error or abuse of discretion. ***See id.*** ("Husband's recent work history of either full-time employment at $9.50/hour or part-time employment at $20/hour justifies

Master Ferber's assessment of an earning capacity of $20,000 for 2017 and $22,000 for 2018.").

In her fifth issue, Wife claims the court erred or abused its discretion in requiring Wife to make a lump sum cash payment to Husband in the amount of $18,750.00. The master's recommendation of the lump sum cash payment recognized that Husband's share of the equitable distribution award was largely comprised of retirement assets. That, coupled with the fact that no award was given for counsel fees, and that Husband's attorney testified that he had not been paid regularly, supports the court's determination. We accept this as consistent with the trial court's goal of effectuating economic justice between the parties. *See* 23 Pa.C.S.A. § 3102(a)(6) (providing that it is Commonwealth's policy effectuate economic justice between divorced parties). *See also Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa. Super. 2003) (objective of Divorce Code is to effectuate economic justice between parties who are divorced and ensure fair and just determination and settlement of property rights). We find no error or abuse of discretion.

In her sixth issue, Wife claims the court erred or abuse its discretion in granting Husband's petition to prohibit bifurcation, by order dated October 15, 2018. Wife contends this prevented her from obtaining a divorce decree after the trial court's September 24, 2018 order, which made final the report and recommendation of the master, and continued her APL obligation instead of converting it upon entry of a decree to the lesser amount of alimony.

The trial court reasoned that because both parties planned to appeal and litigation would be ongoing, it would be inappropriate to permit bifurcation and entry of the decree. Further, the court's September 24, 2018 order, though disposing of the equitable distribution issues, remanded the matters for a support hearing before a special master. That hearing was held on December 4, 2018.

Wife presents little argument on this issue, and cites to no statutory authority or case law to support her claim. Wife merely states that the economic claims had been decided and, thus, bifurcation was not required to move forward with the entry of the divorce decree. In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). "This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived." *Commonwealth v. B.D.G.*, 959 A.2d 362, 371–372 (Pa. Super. 2008) (en banc) (some citations omitted). Notably, Wife ignores the import of this Court's decision in *DeMasi v. DeMasi*, 597 A.2d 101 (Pa. Super. 1991). There, we stated:

> [A] divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable

distribution, despite the entry of the decree, APL will continue throughout the appeal process *and any remand* until a final Order has been entered.

*Id.* at 104 (emphasis in original). *See Shuda v. Shuda,* 283 Pa. Super. 253, 423 A.2d 1242, 1244 (1980) (considerations of public policy require dependent party be entitled to support, in form of APL before entry of decree; since there is absolute right of appeal from decree, these same considerations require that dependent party be entitle to support during the pendency of appeal). *See also Prol v. Prol*, 840 A.2d 333 (Pa. Super. 2003) (award of APL not dependent upon status of parties but on state of litigation). We find no error or abuse of discretion.

In her next issue, Wife claims the court erred and/or abused its discretion in ordering her to pay Husband $700 in attorney's fees. We find no abuse of discretion. *See* 42 Pa.C.S.A. § 2503(7) (right of participants to receive counsel fees); *see also* Trial Court Opinion, *supra* at 33-35 (court found Wife's petition for special relief obdurate and vexatious; petition was filed less than one month after court had considered and made clear its resolution of the issue of bifurcation/APL).

Finally, Wife claims the court erred and/or abused its discretion in its January 18 2019 order, refusing to terminate Husband's APL. This claim is meritless. *See DeMasi*, *supra*.

The purpose of equitable distribution is to "equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner

as the court deems just after considering all relevant factors." 23 Pa.C.S.A. § 3502(a). The trial court had the broad discretion to distribute the marital property equitably, in the manner it deemed just, under the circumstances. *See Carney*, *supra* at 131; 23 Pa.C.S.A. § 3502(a). We conclude the trial court has carried out the purpose and objective of the Divorce Code. The parties have failed to provide clear and convincing evidence that "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will[.]" *Carney*, *supra* at 131 (citation omitted). Accordingly, we remand for correction of the order in accordance with this decision, *see supra* n.1, and we affirm in all other respects on Judge Satler's opinion. We direct the parties to attach a copy of Judge Satler's opinion in the event of further proceedings.

Affirmed in part; remanded for correction of the order. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2020

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
FAMILY DIVISION

VIRGINIA DAWN BEIGHEY
GEORGIADES,

Appellee/Plaintiff/Cross-Appellant,

v.

MICHAEL D. GEORGIADES,

Appellant/Defendant/Cross-Appellee.

No.: FD 15-08755-017
352 WDA 2019

**OPINION**

BY:

HONORABLE JENNIFER SATLER
5073 Family Law Center
440 Ross Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for
Appellee/Plaintiff/Cross-Appellant:
David A. Miller, Esq.
650 Smithfield Street, Suite 1700
Pittsburgh, PA 15222

Counsel for
Appellant/Defendant/Cross-Appellee:
John A. Adamczyk, Esq.
310 Grant Street, Suite 1515
Pittsburgh, PA 15219

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
FAMILY DIVISION

VIRGINIA DAWN BEIGHEY
GEORGIADES,

FD 15-08755-017
No.: 352 WDA 2019

Appellee/Plaintiff/Cross-Appellant,

v.

MICHAEL D. GEORGIADES,

Appellant/Defendant/Cross-Appellee.

## Opinion

**SATLER, J.**                                                                **May 23, 2019**

Appellant/Defendant/Cross-Appellee Michael D. Georgiades (Husband)
appeals this Court's Orders set forth as follows:

- The Order of Court dated September 24, 2018, which made the Master's
  Report and Recommendation dated April 17, 2018, a final order of court;

- The Order of Court dated November 28, 2018, which denied Husband's
  request to vacate the October 15, 2018 Order of Court and remand all of the
  original exceptions to the Master's Report and Recommendation dated April
  17, 2018; and

2

- The Order of Court dated January 18, 2019, which denied Husband's exceptions to the Hearing Officer's Recommendation of December 4, 2018.

Appellee/Plaintiff/Cross-Appellant Virginia Dawn Beighey Georgiades (Wife) appeals this Court's Orders set forth as follows:

- The Orders of Court dated May 10, 2018, which denied Wife's Petition for Special Relief from the Master's Report and Recommendation dated April 17, 2018;

- The Order of Court dated September 24, 2018, which made the Master's Report and Recommendation dated April 17, 2018, a final order of court;

- The Order of Court dated October 15, 2018, which granted Husband's Petition to Prohibit Bifurcation;

- The Orders of Court dated November 9, 2018, which denied Wife's Petition for Special Relief and granted Husband's counsel fees; and

- The Orders of Court dated January 18, 2019, which authorized entry of the divorce decree and kept APL in effect pending further order of court.

A Decree of Divorce dated January 31, 2019, was filed on February 1, 2019. Husband timely filed his Notice of Appeal on March 1, 2019, after which Wife timely filed her cross-appeal on March 14, 2019. The appeals were consolidated and docketed at 352 WDA 2019.

3

## BACKGROUND

Husband and Wife met in Florida and were married on June 6, 1998. Four children were born during the marriage: E.G., N.G., A.G., and J.G. The parties lived in Florida until June 2013 when they relocated to Pittsburgh. The parties' marriage began deteriorating and they eventually separated. Wife filed a Complaint in Divorce on September 2, 2015, followed shortly thereafter by Husband's Petition Raising Claims filed on September 8, 2015.

Since that time, the parties have engaged in extensive litigation regarding issues of date of separation, exclusive possession, custody, APL, child support, and discovery. Following a half-day hearing on the issue of date of separation, the Court determined the date of separation to have been July 31, 2015. By Order of Court dated November 20, 2017, the case was referred to the permanent Master to hear testimony and issue a Report and Recommendation ("Report") concerning all pending economic issues. By Order of Court dated December 13, 2017, the case was listed for a 2-day trial, to be heard March 6 - 7, 2018, before Master Peggy Ferber. Pursuant to Husband's Motion to Modify Support and to Consolidate Support Action with Equitable Distribution, by Order of Court dated January 25, 2018, a hearing on modification of the then-current support order was granted and

4

consolidated into the equitable distribution trial.[1]

Following the trial, Master Ferber issued her Master's Report dated April 17, 2018. Master Ferber calculated the marital estate to be worth $1,500,805, of which she determined Wife possessed $1,448,261 and Husband possessed $52,544. After considering all of the factors set forth in Section 3502(a) of the Pennsylvania Divorce Code of 1980, Master Ferber determined that equitable distribution of the marital estate would be achieved by giving 55% to Husband and 45% to Wife. Taking into account the amount already in Husband's possession, as well as the $151,632.63 in advances he had received, Master Ferber recommended that Wife transfer property worth $621,265.81 to Husband.

Additionally, Master Ferber determined that alimony was necessary in this case. Master Ferber recommended that Husband be awarded $2,200/month in alimony for 24 months beginning on the first day of the month following entry of the final decree in divorce. On the first day of the 25th month, Master Ferber recommended that Husband be awarded $1,850/month in alimony for 12 months. And, on the first day of the 37th month, Master Ferber recommended that Husband be awarded $1,500/month for 12 months, after which time it would terminate. Master Ferber recommended that the alimony be modifiable in the event of Wife's

---

[1] Up until this point in time, the case had been assigned to the Honorable Donald R. Walko, Jr. In February 2018, Judge Walko was transferred to the Allegheny County Court of Common Pleas Civil Division, and this case was administratively reassigned to this Court.

involuntary unemployment or disability or Husband's employment in a job grossing $40,000/year.

Regarding the consolidated modification of support, Master Ferber also awarded Husband with retroactive child support, in addition to retroactively modifying the APL he had already been receiving from Wife.[2] For the year 2017, Master Ferber recommended that Wife pay to Husband child support in the amount of $2,141.65/month and APL in the amount of $4,185/month. For the year 2018, Master Ferber recommended that Wife pay to Husband child support in the amount of $2,195.92/month and APL in the amount of $3,454.22/month. Upon entry of the final decree in divorce, Master Ferber recommended that Wife continue to pay child support in the amount of $2,195.92/month until further order of court. Wife's arrears were set at $55,913.49, to be paid at $300/month until paid in full.

Lastly, regarding Husband's requests for fair rental credits of the marital residence and counsel fees, Master Ferber determined that Husband was entitled to neither.

Husband filed Exceptions to Master Ferber's Report on May 4, 2018. Wife filed Cross-Exceptions on May 10, 2018, as well as a Petition for Special Relief

---

[2] The then-current support order, dated March 11, 2016, must be read in conjunction with the exceptions Order of Court dated September 15, 2016, and revised Hearing Summary dated September 26, 2016, as well as the Consent Order of Court—Second Support Appeal dated December 13, 2016, the end result being that Husband had the child support obligation, which was offset against Wife's APL obligation.

6

seeking to either vacate or temporarily reverse the portion of Master Ferber's Report related to APL and child support and thus the resulting changes implemented in the PACSES system. By Order of Court dated May 10, 2018, this Court denied Wife's Petition for Special Relief.

Arguments on both parties' exceptions were heard by this Court on August 15, 2018. By Order of Court dated September 24, 2018, this Court granted and denied some of each parties' exceptions, largely resolving the equitable distribution issues. Regarding support, this Court's September 24, 2018 Order of Court granted Wife's Cross-Exceptions related to child support and APL and vacated the portion of Master Ferber's Report retroactively modifying the same. This Court remanded the case to Hearing Officer Beattie to address the issue of support retroactive to January 25, 2018, Husband's filing date, using a net monthly income for Wife of $15,260 and an earning capacity for Husband of $22,000 for 2018.[3]

During the pendency of the remand hearing, which was scheduled for December 4, 2018, both parties filed a number of petitions for special relief. On October 15, 2018, Husband presented a Petition to Prohibit Bifurcation of the case and requested that no Decree in Divorce be entered until all claims including child

---

[3] This Court specifically remanded the support case to Hearing Officer Beattie for two reasons. First, HO Beattie is a former permanent Master and is well-versed in complex support cases. Second, HO Beattie is familiar with this case and the parties, having previously presided over their support case in 2016.

7

support were resolved. On that same day, Wife presented a Petition for Special Relief to Implement Order of September 24, 2018, in which she requested the Allegheny County Domestic Relations Section make the necessary changes to the PACSES system to effectuate this Court's ruling in paragraphs #46 and #48 of that Order, which vacated Master Ferber's retroactive modification of Wife's APL and created a new child support obligation. By two Orders of Court dated October 15, 2018, this Court granted both Husband's Petition to Prohibit Bifurcation and, using its own language, Wife's Petition for Special Relief to Implement Order of September 24, 2018.

Nevertheless, on November 9, 2018, Wife presented another Petition for Special Relief in which she sought permission to file her Praecipe to Transmit the Record on or after December 4, 2018, so that a Decree in Divorce would issue, as well as to terminate APL effective June 14, 2018, and re-characterize the support she had paid from that time forward as alimony, or authorize the Hearing Officer at the remand hearing to issue her a credit towards her alimony obligation. In response, Husband filed Defendant's Response to Plaintiff's Motion for Special Relief and Motion for Sanctions in which he argued that Wife's request was contrary to established law and practice. By Order of Court dated November 9, 2018, this Court denied Wife's Petition for Special Relief and granted Husband's request in his Response for $700 in counsel fees.

8

On November 28, 2018, Husband presented a Motion for Clarification/Reconsideration of the Court Order of October 15, 2018, in which he sought to vacate the October 15, 2018, Order of Court granting Wife's Petition for Special Relief to Implement Order of September 24, 2018, and instead expand the scope of the December 4, 2018 remand hearing to cover all of the original exceptions filed by each party. Wife filed Plaintiff's Response to Defendant's Motion for Clarification/Reconsideration and Request for Sanctions in which she argued Husband's request was an inappropriate attempt at post-trial relief in violation of Pa. R.C.P. Rule 1920.55(e). By two Orders of Court dated November 28, 2018, this Court denied both parties' motions.

The remand hearing on the issue of support took place on December 4, 2018. On December 20, 2018, Hearing Officer Beattie issued a Recommendation and detailed Hearing Summary explaining the parties' support obligations. In accordance with the parameters set forth in this Court's Order of September 24, 2018, Hearing Officer Beattie recommended that effective January 25, 2018 - June 13, 2018, Wife pay the amount of $5,159.15/month in APL and child support for the four minor children, and that effective June 14, 2018 (post-emancipation for the oldest child), Wife pay the amount of $5,511/month in APL and child support for the three minor children. Wife's arrears were set at $14,422.91, to be paid at $50/month until paid in full.

On January 9, 2019, Husband filed Exceptions to Hearing Officer Beattie's Recommendation. On January 18, 2019, Wife presented a Petition for Special Relief in which she accused Husband of filing one frivolous exception not related to the Hearing Officer's Recommendation, but rather related to this Court's previous Orders of September 24, 2018, October 15, 2018, and November 28, 2018, simply to delay entry of the divorce decree. Wife requested, *inter alia*, that Husband's exception be dismissed, she be authorized to file a Praecipe to Transmit the Record so that a divorce decree may be issued, and that after entry of the divorce decree, the order for APL and child support be replaced with an order for alimony and child support.

Husband filed Defendant's Response to Plaintiff's Motion for Special Relief and Motion for Sanctions in which he admitted to filing the exception simply to preserve the retroactivity date issue for appeal and requested this Court to dismiss his exception but keep APL in place during his anticipated appeal. In response, Wife filed Plaintiff's Reply to Defendant's Response to Plaintiff's Petition for Special Relief in which she requested that the order attached to Husband's Response be denied, except for the requested authorization to file a Praecipe to Transmit the Record so that a divorce decree may be issued. By three Orders of Court dated January 18, 2019, this Court, *inter alia*, dismissed Husband's exception to the Hearing Officer's Recommendation, ordered that APL would

remain in place pending further order of court, and authorized Wife to file a

Praecipe to Transmit the record.

After entry of the Decree in Divorce, this Court's previous orders became

final, appealable orders of court to which these appeals followed.

## MATTERS COMPLAINED OF ON APPEAL--HUSBAND

In his Statement, Husband identifies the following thirteen issues on appeal:

1. Husband was denied his 55% of the marital estate contrary to 23 Pa. C.S.A. §3502(a)(10.1).

2. The trial court erroneously counted as part of the marital estate Husband's premarital TIAA Cref account.

3. The Master wrongly counted as an advance to Husband Wife's annual severance from her former employment and failed to find what was undisputed and stipulated to that Wife withheld from Husband his portion of the annual severance for year 2016.

4. The Master erred in finding that Husband was advanced $8,250 for Wife's improvements to the marital residence in which she alone resided. The trial court erred in increasing this amount to $16,907.15.

5. The Master did not divide the marital household items and personalty.

6. The trial court abused its discretion and erred when it disturbed the Master's finding of awarding 55% of the assets to Husband given the equitable distribution factors all in favor of Husband and reducing his percentage to 50%.

7. The trial court abused its discretion and erred when it lowered the cash payment to Husband from $25,000 to $18,750 given Wife retained the majority of tax-free cash assets including both houses, which she could mortgage to pay Husband more cash.

8. The trial court abused its discretion and erred when it overturned the

11

Master's decision to deny the costs and attributed maintenance/construction costs for the Hidden Valley second house to Husband given Wife retained the same in equitable distribution and will be the only one to enjoy those improvements.

9. The trial court abused its discretion and erred when it granted Wife's exception to make Husband responsible for the parties alleged 2015 tax liability in the amount of $2,067.00 but denied Husband's exception requesting that he obtain half of the parties tax refund of $15,000.00 for 2015 as Wife was subsequently forced to amend her return by Husband for 2015 in order to provide the refund yet Wife retained the same.

10. The trial court abused its discretion and erred in granting Wife's exceptions as to the percentages of unreimbursed medical costs for the children and extra-curricular activities, as the Master found Husband responsible for only 27.5% not 42%.

11. The trial court abused its discretion and erred when it changed the retroactivity date for support purposes from January 1, 2017 to January 25, 2018 as the Master has discretion beyond the filing date for retroactivity based upon the parties' circumstances (income) so as to properly and accurately determine support.

12. The Master and trial court erred by not including Wife's U.S. Steel Stock in the marital estate.

13. The trial court erred in the valuation and handling of Wife's money market account.

## MATTERS COMPLAINED OF ON APPEAL--WIFE

In her Statement, Wife identifies the following nine issues on appeal:

1. The trial court erred as a matter of law or abused its discretion in denying Wife's exception claiming Master Ferber erred in finding that alimony is necessary in this case and in recommending that Wife pay Husband alimony after the final divorce decree.

2. The trial court erred as a matter of law or abused its discretion in

12

denying Wife's exception to the Master's recommendation as to the amount of alimony payable to Husband as set forth on pages 8 and 10 of the Master's Report.

3. The trial court erred as a matter of law or abused its discretion in denying Wife's exception to the Master's recommendation as to the term of years of alimony payable to Husband as set forth on pages 8 and 10 of the Master's Report.

4. The trial court erred as a matter of law or abused its discretion in denying Wife's exception claiming that the Master erred in finding that Husband's earning capacity was $20,000 annually in 2017 and $22,000 annually in 2018.

5. The trial court erred as a matter of law or abused its discretion in requiring Wife to make a lump sum payment of $18,750 to Husband as part of the equitable division of marital property and in granting only in part Wife's exception to the Master's recommendation that wife pay Husband a lump sum of $25,000 in cash.

6. The trial court erred as a matter of law or abused its discretion in granting Husband's Petition to Prohibit Bifurcation by Order dated October 15, 2018, which prevented Wife from obtaining a divorce decree in October 2018 after the trial court's Final Order was issued on September 24, 2018.

7. The trial court erred as a matter of law or abused its discretion in denying Wife's Petition for Special Relief ("Petition") by Order dated November 9, 2018, thereby precluding Wife from obtaining the divorce decree in December 2018 and failing to terminate Husband's alimony pendente lite as of June 14, 2018, and to grant the other relief requested in her Petition.

8. The trial court erred as a matter of law or abused its discretion in the Order dated November 9, 2018, requiring Wife to pay Husband $700 in attorneys fees in that Wife's Petition was not dilatory, obdurate, or vexatious, see 42 Pa. C.S.A. §2503, and it was filed with legal support and a good faith basis seeking to implement the Master's recommendation.

9. The trial court erred as a matter of law or abused its discretion in its Orders of January 18, 2019, refusing to terminate Husband's alimony pendente lite effective as of the date of the final divorce decree.

## DISCUSSION—HUSBAND'S APPEAL

### Tax Ramification

Husband claims he was improperly denied his share of the marital estate contrary 23 Pa. C.S.A. §3502(a)(10.1). In fashioning an equitable distribution award, one of the factors that courts are to consider is the "Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain." 23 Pa. C.S.A. §3502(a)(10.1) It was clear from her Report that Master Ferber considered the tax ramifications of Husband's award. On page 8 of the Report, Master Ferber noted that this case was "cash poor but asset rich," that the "bulk of the equitable distribution to Husband is in the nature of retirement assets," and that Husband would incur taxes upon withdrawal.

Given the lack of liquid assets in this estate, this Court could not find that Master Ferber erred. At 56 years of age, Husband is approaching a point in life where having retirement assets is more important than ever. Wife, at 51, is not far behind, yet the award to Husband greatly depletes the retirement assets that would otherwise be available to her as a result of her employment. Thus, although Wife may be left with more liquid assets, she must now continue to work to prepare for

14

retirement, as well as either liquidate assets or take out a loan to furnish Husband with the lump sum cash payment awarded to him. Husband, on the other hand, is being given retirement assets that he would otherwise not have at a point in his life where such assets are critical, while also receiving cash in the form of alimony and child support.

TIAA-CREF Account

Husband claims this Court erred by including his premarital TIAA Cref account as part of the marital estate. Although it is undisputed that Husband obtained the TIAA Cref account through his employment with Howard Hughes, and it was stipulated to by both parties that Husband did not work for Howard Hughes during the marriage, it was very much contested how much of the value of the TIAA Cref account would be considered premarital or marital property.

Husband offered no testimony as to the value of the account either before marriage or after separation. Wife, on the other hand, testified that "[w]ith respect to the Howard Hughes 401k, that certainly grew during the course of the marriage." *Trial Transcript (T.T.) from March 6, 2018*, p. 227. In addition, Husband's own counsel, in a letter to Wife's counsel dated January 30, 2018, entered into evidence and marked as Exhibit 47, noted that the value at the date of marriage was $62,393.23 and then acknowledged that the parties withdrew $44,696.00 in 2005. This acknowledgement by Husband's counsel results in a net

value in 2005 of $17,697.23, which means the value of the account at the time of trial, $47,679.31, was the result of an increase that undoubtedly occurred during the marriage. Therefore, with no evidence of the value before marriage, given the evidence of the increase in value during the marriage, this Court considered the entire value to be marital property.

Greenberg Traurig Severance

Husband claims Master Ferber incorrectly counted as an advance to him Wife's annual severance payments from her former employer, Greenberg Traurig ("GT"), and failed to account for the 2016 severance that Wife had yet to share with him. Both parties stipulated that Husband had received one-half of each of the GT severance payments that Wife received in 2017 and 2018, for a total of $86,080.80, and that the nature of the severance payments as either income or marital property was in dispute. From her Report, it appeared to this Court that Master Ferber treated the severance payments as marital property when she included the total amount that Husband had already received, $86,080.80, as an advance. It is unclear why Husband considers this to be an error.

As for the payment in 2016, it appeared to this Court that Master Ferber neglected to address the $84,662.40 that had yet to be distributed. As such, in following suit that the severance payments were marital property and had been historically divided 50/50 between the parties, this Court awarded one-half of the

2016 payment, $42,331.20, to Husband in its September 24, 2018 Order of Court by increasing Master Ferber's award to Husband of Wife's GT 401(k) by the same amount.[4]

Improvements to Marital Residence

Husband claims Master Ferber erred by treating as an advance to him $8,250.00 for improvements to the marital residence that Wife made and that this Court then also erred by increasing that amount to $16,907.15. At trial, Wife provided expert testimony by Kathryn Cinker, a certified residential appraiser, regarding the valuation of the marital home. *See T.T. from March 6, 2018*, pp. 29-55. Ms. Cinker provided reports for the value of the marital residence as of July 31, 2015, which she determined to be $250,000 (Exhibit 4), and the value as of December 28, 2017, which she determined to be $305,000 (Exhibit 3).

When asked if she could explain the basis for the difference in values, Ms. Cinker responded, "Sure. Improvements were made, an additional room was added, and the market in Mount Lebanon has gone up every year." *T.T. from March 6, 2018*, p. 38. On cross-examination by Husband's counsel, Ms. Cinker specifically identified the improvements she considered, which consisted of "the new room with a gable ceiling was added, the bathroom on the first floor had new

---

[4] The "**" endnote designation directs the reader to the Court's explanation for the increase in value.

tile. There was a new patio out front. There was new kitchen countertops." *Id.* at 47. Even Husband's expert witness, Andrew Yoder, a licensed residential appraiser, testified as to the benefit of the improvements to the value of the marital residence. *See T.T. from March 7, 2018*, p. 47.

Wife provided undisputed evidence at trial of the total expenses incurred to make the "major renovations to the [marital residence] and maintenance," since August 2015, which totaled $33,814.29. *T.T. from March 6, 2018*, pp. 174, 197-198. Although it was clear to this Court that Wife's improvements to the marital residence helped increase its value, it was unclear how Master Ferber calculated the $8,250 she awarded to Husband as an advance in her Report. Therefore, in accordance with the 50/50 equitable distribution scheme adopted by this Court, this Court granted Wife's exception as to the value of Husband's share of these costs and ordered that 50% ($16,907.15) be treated as an advance to him.

Household Items and Personalty

Husband claims Master Ferber erred by not dividing the marital household items and personalty, which he claims had significant value. In her Report, Master Ferber determined that each party "shall retain possession of all other assets in her or her name, possession and control...this includes personalty.... Notwithstanding this provision, should Wife agree to transfer any of the items sought by Husband...she may do so." *Report*, p. 7.

18

There was no evidence provided regarding the valuation of various household items other than Husband's testimony, to which Wife then rebutted. *See T.T. from March 7, 2018*, pp. 64-90. Husband testified to a number of items that were still at the marital residence that he wanted; Wife agreed on the record to give him some of these items. And then specifically, Master Ferber directed Wife to provide Husband with copies of family photographs. *T.T. from March 7, 2018*, pp. 79-82. Given the contradictory testimony and lack of valuation for specific items, this Court found no error in Master Ferber's determination and lack of award of household items and personalty.

Equitable Distribution Award

Husband claims this Court erred by denying him his 55% share of the marital estate that was recommended by Master Ferber. In fashioning an equitable distribution award, courts are to consider the eleven factors set forth in 23 Pa. C.S.A. §3502(a). These factors require consideration of the parties' economic circumstances and the nature of their relationship. The factors serve as a guideline, and the particular facts of each case dictate how they will be applied.

In footnote 14 found on page 6 of the Report, Master Ferber sets forth her reasoning for recommending Husband be awarded 55% of the marital estate:

> Wife's earning capacity is much greater than Husband's and she will
> have the opportunity to increase her sole and separate estate
> throughout her future employment. Wife is 51 and Husband is 56.
> The Master is going to be awarding alimony to Husband for a 4 year

19

period so that when he reaches age 60 he will be able to draw down on the IRA or 401(k) funds he will be receiving in equitable distribution without penalty. Hopefully he will have improved his earnings by working full time. Plus, when the alimony ends, he will continue receiving child support for [A.G.] and [J.G.] until they graduate from High School. While the Master is mindful that Wife will be solely responsible for the children's college educations, under current Pennsylvania law, parents have no obligation to support their children through college, so this is not a factor the Master may address.

After consideration of the evidence, Master Ferber's reasoning, and the factors set forth in §3502(a), this Court amended Master Ferber's recommendation to a 50/50 equitable distribution award.

Two factors contributed to this Court's decision to amend Master Ferber's recommendation. First and foremost, Master Ferber erred in her analysis set forth above regarding a penalty to Husband if he withdrew money from the funds he would be receiving in equitable distribution. Oddly enough, elsewhere in her Report Master Ferber correctly acknowledges that "Husband will be receiving more than $500,000 in retirement benefits in equitable distribution and will be able to withdraw funds from his IRAs without any penalties." *Report*, p. 10, footnote 17. To the extent Master Ferber incorrectly considered a possible penalty to Husband in accessing the funds he would be receiving via a QDRO, this Court determined a slight amendment to the award was justified.

Second, and to a lesser extent, although it did not sway this Court's decision regarding Husband's earning capacity for support purposes, the fact that Husband

chose to be either unemployed or under-employed for many years of the parties' marriage did play a factor in this Court's amendment of the equitable distribution award. It is without question that Wife's lucrative employment was responsible for the parties' high standard of living, their station in life, and the majority of the marital assets. In choosing to remain either unemployed or under-employed, Husband was also choosing to not contribute to their standard of living, their station in life, and to their marital assets. Even at trial, Master Ferber found that "Husband continues to use his children as an excuse to work less than full-time." *Report*, p. 9, footnote 16.

Given the fact that Husband had already received nearly $100,000 in APL at the time of trial, over $85,000 from two years' worth of Wife's GT severance payments, and will continue to receive four years of alimony and then child support beyond that, this Court felt a 50/50 equitable distribution award was justified.

## Cash Payment

Husband claims this Court abused its discretion and erred by lowering the $25,000 lump sum payment recommended by Master Ferber. A reading of Master Ferber's Report indicates that, although she denied Husband's claim for counsel fees, her hope was that he would apply a significant portion of the lump sum payment to his outstanding legal fees, to which his attorney testified had not been

being paid regularly. *See Report*, pp. 8-9. Coupled with the fact that the equitable distribution award to Husband was largely in the form of retirement assets, this Court found no fault in Master Ferber's award, other than the amount. Because the rest of the award by this Court took more than 50% of the account balances in Wife's possession (63% of the Vanguard account, 56% of the GT 401(k), and 95% of the US Steel savings plan), the $25,000 lump sum payment recommended by Master Ferber was reduced to $18,750 to achieve final balancing of the 50/50 distribution scheme awarded by this Court.

Maintenance/Construction Costs

Husband claims this Court abused its discretion and erred by overturning Master Ferber's decision to deny as an advancement to Husband a share of Wife's maintenance/construction costs for the Hidden Valley condo. In footnote 11 on page 5 of the Report, Master Ferber explained that she was "not awarding Wife any credits for expenses at the Hidden Valley condo" because since separation, Husband had spent only 2 nights there, so Wife and children enjoyed virtual exclusive possession.

However, although Husband said that Wife "led him to believe she changed the locks," he also admitted that he was "not a snow skier," and that it was "only because the kids like to go out there on occasions that I lobbied to get [access]. *T.T. from March 7, 2018*, p. 147. Husband stated that he had "probably been out

22

there five times total…maybe twice since" he petitioned the Court for access. *Id.* at 147. When Master Ferber asked how he was able to visit prior to petitioning the Court for access, Husband acknowledged it was because he was allowed access. *Id.* at 147.

Although this Court understood Master Ferber's thought process in denying Wife's request for credit of the expenses, the fact remains that Husband voluntarily chose not to frequent the Hidden Valley condo despite having access that was later re-emphasized by a court order. Furthermore, Husband got the benefit of the value of the Hidden Valley condo in the calculation of the marital estate, and the value of the Hidden Valley condo was the result of the maintenance and improvements costs that were paid for by Wife. As a result, because this Court determined that equitable distribution of the Hidden Valley condo required a 50/50 share of the costs associated with it, this Court granted Wife's exception and ordered that one-half of the costs, $16,781.31, be treated as an advance to Husband.

Tax Refund

Husband claims this Court erred by granting Wife's exception that he share in the tax liability for 2015 and by denying his exception in which he claimed he was entitled to half of the tax refund of $15,000 issued to Wife in 2015. Wife provided a detailed explanation of the filing process for the parties' 2015 tax return. *See* T.T. *from March 6, 2018*, pp. 144-147. Wife initially filed her 2015

tax return under the 'married filing separately' status, which resulted in a tax liability for her around $18,000, which she paid. At some point later, Husband and Wife decided to file a joint tax return for 2015, which reduced the tax liability to $4,134, which, again, Wife paid. Thus, the $15,000 that Husband coins as a refund was actually a credit back to Wife of her overpayment from her original filing status.

Husband confuses the issue by labeling the monies issued to Wife as a tax refund. As Wife explained on the record, "I got money returned to me, but it's not like we filed taxes and we are getting a refund because we had a tax liability." *T.T. from March 6, 2018*, p. 146. In addition, just as she saved money from changing her filing status, Wife testified that Husband "would have owed more in taxes as well. So it was to both of our benefits to file jointly." *Id.* at 147. Thus, both parties were better off from filing a joint tax return, and because Wife paid the entire tax liability herself, this Court granted Wife's request that half of that tax liability be treated as an advance to Husband for equitable distribution.

Unreimbursed Medical

Husband claims this Court abused its discretion and erred in granting Wife's exceptions as to the percentages of unreimbursed medical costs for the children and extra-curricular activities, as the Master found Husband responsible for only 27.5% not 42% as the trial court changed it to without supporting facts. Per Master

Ferber's Report, she treated as an advance to Husband in equitable distribution a 15% share of unreimbursed medical expenses for the children and 15% share of children's extra-curricular activities, not 27.5% as alleged by Husband in his Statement. *See Report,* p. 5.

It was unclear to this Court how Master Ferber determined the 15/85 split for unreimbursed medical costs and extra-curricular activities for the children that Wife incurred in 2016 and 2017. *See* Exhibits 21 and 22. Given this Court's decision to vacate Master Ferber's 2017 retroactivity date for Husband's support modification, the prior support order would dictate the split of such costs. Under the prior support order, dated September 26, 2016, effective March 3, 2016, Husband was responsible for 42% of the qualified unreimbursed medical expenses. Although the prior support order did not specifically address extra-curricular activities, this Court applied the same percentage to those costs.

Retroactivity Date

Husband claims this Court abused its discretion and erred when it changed the retroactivity date for support purposes from January 1, 2017 to January 25, 2018 as the Master has discretion to modify support beyond the filing date. Under Pa. R.C.P. §1910.17(a), "[a]n order of support shall be effective from the date of the filing of the complaint or petition for modification unless the order specifies otherwise." It goes on to state the following:

However, a modification of an existing support order may be retroactive to a date preceding the date of filing if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

Pa. R.C.P. §1910.17(a). In addition, 23 Pa. C.S.A. §4352(e) provides the following:

No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor. However, modification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

In his Motion to Modify Support and to Consolidate Support Action with Equitable Distribution, Husband alleged his "income has changed due to working a different job and Wife has received substantial pay increases, bonuses, and stock options which she is cashing in." At no point in his Motion does Husband set forth justification for retroactively modifying the support order prior to his filing date of January 25, 2018.

Likewise, at trial Husband offered no testimony that he was physically or mentally precluded from previously filing for a modification of support, or that Wife had made misrepresentations to him that precluded him from previously

26

filing for a modification of support. Therefore, because this Court determined that Master Ferber erred/abused her discretion in retroactively modifying support, this Court ruled the effective date of Husband's support modification to be his filing date of January 25, 2018.

Exclusion of U.S. Steel Stock

Husband claims Master Ferber and this Court both erred by not including Wife's U.S. Steel stock in the value of the marital estate. Wife explained that she cannot simply cash in stock to generate income at any time of year.

> "So as a member of the legal department, I'm sometimes privy to confidential information. And so pursuant to the SEC rules that Mr. Clark referred to yesterday, I'm prohibited from trading as it would be considered insider trading. So, for instance, right now I'm in a blackout period. I cannot trade any stocks. There are certain times during the year where, you know, hopefully I don't have that type of confidential information. But there's a whole protocol I have to go through in order to trade stock. So I have to seek approval. It goes through a committee, and then if it's determined that I don't have any information that would qualify as confidential under the SEC rules, than I can trade. But I've been under... For instance, I've been in a blackout period for several months. So, unfortunately, you know, sometimes I miss out on more beneficial times to trade because I'm privy to that information and so prohibited from doing so."

*T.T. from March 7, 2018*, pp. 14-15. Master Ferber deleted the stock for separate handling, noting that the stock is "actually worthless unless the share values when mature and available for sale exceed the strike price as set forth in the award. These are a wait and see asset...." This Court agreed with Master Ferber's rationale and thus excluded the stock from the marital estate.

27

## Money Market Account

Husband claims this Court erred by not using the date of separation balance of $32,070.59 for Wife's PNC Money Market account in calculating the value of the marital estate. Husband is correct. The $11,069 balance that Master Ferber found Wife retained for her own benefit was the net result after Wife had withdrawn money that was either transferred to Husband or used to pay contractors for work performed on the marital home, but in both cases ultimately treated as advances to Husband. *See T.T. from March 6, 2018*, pp. 194-201. In calculating the value of the marital estate, this Court should have used the date of separation balance of $32,070.59.

## DISCUSSION—WIFE'S APPEAL

### Alimony

The first three issues Wife cites in her Statement involve alimony and can be addressed together. Wife claims that Master Ferber erred in finding that alimony was necessary, in determining the amount of alimony payable, and in the duration for which alimony was payable.

Alimony is a secondary and need-based remedy. The purpose of alimony is "to ensure that the reasonable needs of the person who is unable to support himself of herself through appropriate employment, are met." *Moran v. Moran*, 839 A.2d 1091, 1096 (Pa.Super.2003) (citations omitted). "Alimony is based upon

reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." *Moran*, p.1096. Following a divorce, alimony "is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super.2004).

Determinations of alimony are governed by 23 Pa. C.S.A. §3701. "In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors." 23 Pa. C.S.A. §3701(b). The section then goes on to list seventeen factors the court is to consider when making such determinations. In support of her determination that alimony was necessary, as already stated Master Ferber noted that this case was "cash poor but asset rich" and that the "bulk of the equitable distribution to Husband is in the nature of retirement assets." *Report*, p. 8. And although she incorrectly determined that Husband would incur penalties if he withdrew money from these retirement assets before age 59 ½, Master Ferber was correct in concluding he would incur taxes. *See T.T. dated March 6, 2018*, pp. 93-98.

In support of her determination regarding the amount and duration of alimony, Master Ferber found that "Wife's earning capacity is now and will be

greater than Husband's for the foreseeable future." *Report*, p. 8. From August 2016 to the time of trial, Husband was working part-time as an UBER driver, where he made $10,000 in 2017; contrast that to Wife, whose monthly net income was determined to be $17,509 in 2017. Master Ferber noted that Husband "has been seriously under-employed for several decades, ... has a history of quitting or losing jobs or changing jobs or not working at all," and "[s]ince 2003 ... has taken no steps to obtain additional education or certifications and at 56 is unlikely to be an attractive candidate to most businesses." *Id.* at 8.

However, Master Ferber also noted that "history shows that when he looks, he finds jobs," and prior to the time when "Husband was able to rely on Wife's earnings, he regularly made between $40,000 and $60,000/year." *Id.* at 8. As such, Master Ferber limited Husband's alimony award to four years and in decreasing amounts, which are drastically less than the amount of APL he had been receiving. Master Ferber also made Husband's alimony modifiable in the event he obtained a job grossing $40,000/year.

Upon review of the record, this Court concluded that Master Ferber correctly determined the issue of alimony. The parties were married for 17 years prior to separation, and like many marriages that result in children, one party became the primary breadwinner and the other party became the homemaker. Husband testified that he reduced his employment and/or quit working with the consent of

Wife, who quickly and greatly out-earned him. *See T.T. dated March 7, 2018*, pp. 122-127. And although Wife disagreed with Husband's testimony, the fact remains the parties continued in this arrangement for many years. Given the fact that the bulk of Husband's equitable distribution award is in the form of retirement assets, economic justice dictated the payment of alimony in this case.

Earning Capacity

The second issue that Wife raises is this appeal is tangential to the issue of alimony. Wife claims this Court erred and/or abused its discretion in denying her exception claiming that Master Ferber erred in finding that Husband's earning capacity was $20,000 in 2017 and $22,000 in 2018. In a support action, if the trier of fact determines that a party "has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa. R.C.P. §1910.16-2(d)(4). Factors to consider when assessing an individual with an earning capacity include "[a]ge, training, health, work experience, earnings history and child care responsibilities." *Id.*

Master Ferber set forth a thorough work history for Husband in her Report. "Husband was fully employed for several years before and for the first few years of the marriage." *Report*, p. 2. After the parties began having children, Husband's employment decreased and then ceased altogether. From 2003-2009 and then 2011-2013, Husband did not work at all. After moving to Pittsburgh in 2013,

31

Husband remained unemployed up until "the Summer of 2014 [when] he took a job at a gas station/convenience store and as a pizza deliveryman." *Id.* at 2. Husband quit that job in August, but in September 2014-July 2015, he went to work part-time for Direct Tech Solutions at $20/hr. "By March 2016, Husband was back at the gas station/convenience store earning $9.50/hr as the assistant manager." *Id.* at 2. In August 2016, Husband quit that job to drive for UBER, where he continues today in a part-time capacity.

Thus, even though his most recent earnings from UBER were for only $10,000/year, Husband's recent work history of either full-time employment at $9.50/hour or part-time employment at $20/hour justifies Master Ferber's assessment of an earning capacity of $20,000 for 2017 and $22,000 for 2018. As previously stated, Husband is likely not an attractive candidate for employers. However, he was twice able to secure full-time employment at $9.50/hour, so this Court concluded Master Ferber correctly assessed Husband's earning capacity.

Lump Sum Payment

Third, Wife claims this Court erred and/or abused its discretion in requiring her to make a lump sum payment of $18,750 to Husband as part of equitable distribution and in granting only in part her exception to Master Ferber's recommendation that she pay Husband a lump sum of $25,000 in cash. This Court's rationale is set forth above in the section of Husband's appeal regarding

the same issue.

## Bifurcation/APL/Counsel Fees

The remaining issues set forth above involve decisions by this Court that occurred hand-in-hand and, as such, can be addressed together. Wife claims this court erred and/or abused its discretion in not bifurcating this case, and therefore preventing entry of the divorce decree, in keeping APL in place, rather than converting Wife's payment of support to alimony, and in awarding Husband counsel fees.

On October 15, 2018, Husband presented a Petition to Prohibit Bifurcation. At that time, the remand hearing on support, which was scheduled for December 4, 2018, had not yet occurred. Moreover, given the history of extensive litigation in this case, this Court thought it inappropriate to permit bifurcation and, therefore, entry of the divorce decree, which would convert Wife's APL payments to the lesser amount of alimony, because ongoing litigation seemed all but guaranteed.

Despite granting Husband's Petition to Prohibit Bifurcation, Wife brought a Petition for Special Relief on November 9, 2018, in which she requested permission to file her Praecipe to Transmit the Record so that a divorce decree could issue and, in essence, to back-date termination of her APL and conversion to alimony to June 14, 2018, or permit the Hearing Officer at the December 4, 2018 remand hearing to make such a determination. In response, Husband presented a

33

Motion for Sanctions in which he argued Wife's Petition for Special Relief was contrary to law and requested $700 in counsel fees.

In support of his argument, Husband cited the case of *Demasi v. Demasi,* which this Court found instructive.

> [A] divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process *and any remand* until a final Order has been entered.

*Demasi v. Demasi,* 408 Pa.Super. 414, 420-421 (1991). In this case, this Court's Order of September 24, 2018, which addressed equitable distribution, was not an appealable order because a final decree had not yet been entered. Thus, this Court considered Wife's presentation of her Petition for Special Relief to be obdurate and vexatious, as set forth in 42 Pa. C.S.A. §2503, as this Court, less than a month prior, had considered this very issue and made its decision clear when it granted Husband's Petition to Prohibit Bifurcation.

Nevertheless, on January 18, 2019, Wife, again, presented a Petition for Special Relief in which she requested, *inter alia,* permission to file her Praecipe to Transmit the Record so that a divorce decree could issue, and to terminate APL and convert her payments to alimony. Husband presented a response in which he agreed that the divorce decree could issue because he planned on filing an appeal

34

of this Court's Order of September 24, 2018. In response to Husband's assertion,

at oral argument, Wife also communicated that she, too, would likely be filing an

appeal to Superior Court. As such, given the plain language of the *Demasi* case

above, this Court felt it would be inappropriate to terminate APL at that time when

at least one party's appeal was forthcoming.

## CONCLUSION

For the foregoing reasons, this Court agrees that the award to Husband

should be adjusted to correct the value of the PNC money market account, but that

all other aspects of the award should be affirmed.

BY THE COURT:

_____
HONORABLE JENNIFER SATLER

35